**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| ROBERT THOMAS MOORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| STATEBRIDGE COMPANY, LLC, | § | |
| | § | With Jury Demand Endorsed |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Robert Thomas Moore ("Plaintiff"), by and through counsel, and for his Complaint against Defendant, Statebridge Company, LLC ("Defendant" or "Statebridge") states as follows:

### I. INTRODUCTION

1.    Plaintiff asserts causes of action against Defendant based on his claims Defendant engaged in willful and malicious actions against him in furtherance of Defendant's efforts to collect a debt on a mortgage account from Plaintiff years after it the debt was discharged in Plaintiff's subject bankruptcy case and the collateral real property surrendered and vacated by Plaintiff; such actions being part of Defendant's policies and procedures and illegal design to profit financially by taking advantage of consumers by harassing them and misrepresenting information to them to deceptively coerce them into paying discharged debts for which these consumers are not personally liable.

1

2.      Specifically, Plaintiff asserts claims against Defendant for the willful, knowing, and/or negligent violations of: 1) the Texas Debt Collection Act, Texas Finance Code § 392.001 et. seq. (the "TDCA"); 2) the common law tort of invasion of privacy; and 3) the bankruptcy discharge injunction of the United States Bankruptcy Court of the Northern District of Texas. Plaintiff seeks to recover actual, statutory, and punitive damages, and legal fees and expenses against Defendant.

## II. Parties

3.      Plaintiff is a natural person residing in Collin County, Texas and is a "consumer" as defined by the FCRA.

4.      Defendant is a foreign limited liability company which may be served by delivering citation to its registered agent, Incorp. Services, Inc., 815 Brazos St., Suite 500, Austin, TX 78701-2509.

5.      Defendant is a "person" and a "user" of consumer credit and other financial information, as said terms are defined under the FCRA.

6.      The debt at issue that Defendant was attempting to collect from Plaintiff was a "consumer debt" as defined by Tex. Fin. Code § 392.001(2) and 15 U.S.C. § 1692a.

7.      Defendant is a "debt collector" as defined by Tex. Fin. Code § 392.001(6) and 15 U.S.C. § 1692a.

8.      Defendant is a furnisher of consumer credit information to Trans Union, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively the "Credit Reporting Agencies" or "CRAs").

## III. Jurisdiction and Venue

2

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 15 U.S.C. § 1681p.

10.     Venue in this district is proper because Defendant transacts business in this district; Plaintiff resides in this district; and conduct complained of occurred in this district.

## IV. FACTUAL ALLEGATIONS

**A.     The Subject Debt Was Discharged as to Plaintiff's Personal Liability in Plaintiff's Bankruptcy Case and the Subject Real Property Collateral was Surrendered and Vacated by Plaintiff Prior to Discharge.**

1.     On November 2, 2009, Plaintiff filed a Chapter 13 bankruptcy in case number 09-37490-sgj13 ("Bankruptcy Case") in the Northern District of Texas, Bankruptcy Court ("Bankruptcy Court").

2.     Prior to Plaintiff filing his Bankruptcy Case, GMAC Mortgage LLC ("GMAC"), as the owner of the subject debt, through its mortgage servicer on the subject loan and account, GMAC, asserted a pre-petition claim against Plaintiff in their attempt to collect a consumer debt he allegedly owed. The debt required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes. In his bankruptcy petition, Plaintiff listed the subject claim in Schedule "D" as a secured claim for a Veteran's Administration Real Estate Mortgage, with GMAC as the creditor, secured by a lien on real property located at 238 Pecos Trail, Crossroads, TX 76227 (the "Property") and identified as Loan and Account No. xxxxx8172 (the "Loan" or "Account").

3.     A true and correct copy of Plaintiff's Schedule "D" is attached hereto as Exhibit "A" and incorporated by reference.

4.      On November 2, 2009, Plaintiff also filed his Chapter 13 Plan ("Chapter 13 Plan") in his Bankruptcy Case, noting he was paying arrearages on the Account through the Plan and that he was going to pay Defendant directly on the Account. Later, however, Plaintiff filed a modified Chapter 13 Plan noting his surrender of the Property collateral.

5.      On November 5, 2009, the Bankruptcy Court sent a copy of the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice") for the Bankruptcy Case by first class mail to GMAC. The 341 Notice warned all creditors in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362. The United States Postal Service did not return the 341 Notice sent to GMAC, so there is a presumption it was received.

6.      A copy of the 341 Notice is attached hereto as Exhibit "B" and incorporated herein by reference.

7.      On November 20, 2009, Defendant filed a proof of claim on the Account in Plaintiff's Bankruptcy Case.

8.      On January 28, 2010, Plaintiff's Chapter 13 Plan was confirmed and an Order confirming Chapter 13 Plan was entered by the Bankruptcy Court.

9.      On December 16, 2010, Defendant filed a Motion for Relief from Stay as to the Property, and an Agreed Order conditioning the motion for relief from stay was entered by the Court on February 4, 2011.

10.      On July 24, 2013, Plaintiff filed his Debtor's Modification of Plan ("Modified Plan") after Confirmation, noting the modification was requested to surrender the Property.

11.     A true and correct copy of the relevant excerpts from Plaintiff's Modified Plan showing his surrender of the Property is attached hereto as Exhibit "C."

12.     On September 19, 2013, the Bankruptcy Court entered an Order approving Plaintiff's Modified Plan and Plaintiff permanently vacated the Property.

13.     On November 10, 2014, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order") (the said order followed Official Form B18, including the explanatory language contained therein). The order discharged Plaintiff from any liability for the subject pre-petition claim. Included with the Discharge Order was an explanation of the general injunction prohibiting those holding pre-petition claims from attempting to collect them. The Discharge Order and its notice warned all creditors in conspicuous language that "**Collection of Discharged Debts Prohibited**" and that "a creditor is not permitted to contact a debtor by mail, phone, or otherwise…or take any other action to collect a discharged debt from the debtor."

14.     On November 12, 2014, the Bankruptcy Noticing Center mailed a copy of the Discharge Order to GMAC and all creditors and other parties listed on the mailing matrix previously filed the Bankruptcy Court, by first class mail; these mailings constituted formal notice of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a) and they were not returned, so there is a presumption they were received.

15.     A true and correct copy of the Discharge Order is attached hereto as Exhibit "D."

16.     At no time during the pendency of the Bankruptcy Case did Defendant, GMAC, or any other person or entity object to or dispute the details of the subject claim contained in Schedule "D" of Plaintiff's bankruptcy petition.

17.     At no time during the pendency of Plaintiff's Bankruptcy Case did the Bankruptcy Court declare or hold that the subject pre-petition claim was non-dischargeable.

18.     At no time during the pendency of the Bankruptcy Case did Plaintiff reaffirm the subject claim or debt with any person or entity.

**B.     Defendant Attempted to Collect the Subject Debt from Plaintiff After he Filed his Bankruptcy Case, Post-Discharge and Post-Surrender of the Collateral Real Property.**

19.     In March 2018, years after the discharge of the debt on the Account in Plaintiff's Bankruptcy Case and Plaintiff's surrender of the Property, Defendant acquired the servicing rights on the discharged Account and began its illegal collection efforts, including:: (1) sending Plaintiff billing statements letters, and notices demanding payment of the discharged debt or actions to coerce payment thereof; (2) furnishing inaccurate, false and negative information to Experian and Equifax on the Account to be reported on Plaintiff's credit reports, misreporting the status of the Account as having a past due balance; and (3) placing an illegal collection call to Plaintiff's counsel.

**1)     Years After the Discharge of the Debt in Plaintiff's Bankruptcy Case, Defendant Sent Plaintiff at Least 4 Billing Statements and 2 Correspondences Demanding Payment of the Subject Discharged Debt and/or Actions from Plaintiff to Coerce Payment Thereof.**

11.     Post-discharge, after the debt was discharged as to Plaintiff's personal liability, which rendered the Account closed with a zero-balance due and owing and making it legally uncollectible, Defendant acquired the servicing rights on the Account and attempted to collect the discharged debt from Plaintiff personally by sending him billing statements and correspondences.

**a)     Correspondences**

6

12.     On or about March 26, 2018, Defendant sent Plaintiff a "**NOTICE OF ASSIGNMENT, SALE AND TRANSFER OF SERVICING RIGHTS**." The Notice informs Plaintiff that effective March 15, 2018, the servicing of the mortgage loan "that is the right to collect payment from you, has been assigned and transferred to Statebridge Company, LLC." It also instructs Plaintiff that "effective March 15, 2018 LOAN CARE, LLC will cease to accept payments related to your loan," and to "[p]lease direct your payment to Statebridge Company, LLC." It further instructs Plaintiff to "**Send Payments to:** Statebridge Company, LLC," followed by Defendant's address.

13.     A redacted copy of the 3/26/18 Notice Defendant sent Plaintiff is attached hereto as Exhibit "E" and incorporated herein by reference.

14.     On or about March 27, 2018, Defendant sent Plaintiff a letter and welcome packet, informing him Defendant was his new mortgage servicer and WVMF Funding, LLC was the creditor and there was an Unpaid Principle Balance of $110,887.15. The enclosed packet included an ACH Enrollment Form, about which the letter states "[t]his form offers you the ability to directly debit a checking or savings account to make your monthly mortgage payment" and "[o]nce set up, your payment will be automatically drafted each month which will help you avoid the time and hassle of mailing your payment each month and avoid any late fees caused by mail delays." The letter instructs Plaintiff to "please sign and return one form to Statebridge Company and retain the other for your records." The packet also includes a 3rd Party Authorization Form, which requests Plaintiff to authorize Defendant to speak to a 3rd party regarding the Loan, and an Authorization for Electronic Communication Form, requesting Plaintiff complete the form to communicate with Defendant through e-mail. Also, the letter

includes "**Loss Mitigation Information**," including a "**Forbearance Plan**" which is "a written agreement to reduce or suspend payments due on your loan for a limited and specific period;" a "**Repayment Plan**," which is "an executed plan wherein you agree to pay your currently monthly payment plus an additional amount and a down payment to repay the outstanding debt owed in an established amount of time;" "**Loan Modifications**," a structured agreement where one or more terms of your mortgage are changed to enable you to bring your defaulted loan current, and help you to keep it current;" "**Short Sales**" to "sell your property and the proceeds from the sale are less than the total amount owed;" and "**Deeds in Lieu**" to "sign over your property to Statebridge in exchange for Statebridge not foreclosing on your home." The letter encourages to apply for these loss mitigation plans, as if the Loan is past-due and owing, and asks Plaintiff to provide Defendant with his bank account information and other personal information.

15.     A redacted copy of the March 27, 2018 letter and enclosed forms Defendant sent to Plaintiff are attached hereto as Exhibit "F" and incorporated herein by reference.

<b>b)     Mortgage Statements</b>

16.     Post-discharge Defendant sent Plaintiff a series of monthly statements regarding the Account (collectively, the "Monthly Statements"), which all included payment coupons and return envelopes, attempting to coerce or deceive Plaintiff to make payments to Defendant, in whole or in part, on the Account.

17.     The Monthly Statements were, for all relevant intents and purposes, virtually identical in that they all specified an amount Plaintiff needed to pay, by a specified due date, to bring his account current; however, the amounts demanded increased monthly. They also

8

included a "**Delinquency Notice**" informing Plaintiff he was late on his mortgage payments, a detachable, self-addressed payment coupon stating the purported "Amount Due" and the due date, and a return envelope.

18.     For example, on or about March 23, 2018, Defendant sent Plaintiff a "**Mortgage Statement**" ("3/23/18 Mortgage Statement") demanding payment of the stated "**Amount Due $72,180.01**" by the "**Payment Due Date 4/1/2018.**" The Statement includes a detachable, self-addressed "**Mortgage Payment Coupon**," which has printed on it "**Amount Due**," "**Due By 4/1/2018: $72,180.01**," and instructs Plaintiff to "*Make check payable to Statebridge Company, LLC*." It also includes a "**\*\*Delinquency Notice\*\***" stating, "**You are late on your mortgage payments**" and "[f]ailure to bring your loan current may result in fees and foreclosure," and "[a]s of March 22, 2018, you are 2,213 days delinquent on your mortgage loan." It also states that Plaintiff had a "Payment due" every month from 10/1/17 through 3/1/18, and a "Current Payment due 4/1/18: $860.66" for a "**Total: $72,180.01 due**" and that Plaintiff "**must pay this amount to bring your loan current**."

19.     A redacted copy of the 3/23/18 Mortgage Statement Defendant sent to Plaintiff is attached hereto as Exhibit "G" and incorporated herein by reference.

20.     On or about April 23, 2018, May 23, 2018, and June 20, 2018, Defendant sent Plaintiff Monthly Statements regarding the Account that were identical in form to the 3/23/18 Mortgage Statement, although the amounts demanded increased with each subsequent statement and the dates they were due differed and were approximately one week after the date of the respective statement. Redacted copies of the April 23, 2018, May 23, 2018, and June 20, 2018 Mortgage Statements are attached hereto as Exhibits "H," "I" and "J," respectively.

> **2)   Years After the Discharge of the Debt, Defendant Made Collection Calls to Plaintiff.**

37.     Post-discharge, Defendant made collection calls to Plaintiff on the Account. Also, on June 6, 2018 at 12:52 p.m., Defendant's representative called Plaintiff regarding the Account by calling Plaintiff's counsel in this matter and asked to speak to Plaintiff.

> **3)   Years After the Discharge of the Debt, Defendant Furnished False, Negative Information to the Credit Reporting Agencies on the Account to be Reported on Plaintiff's Credit Reports and Failed to Correct its Inaccurate Reporting of this Information.**

37.     On or about May 31, 2018, Defendant reported to TransUnion on the Account, reporting that the Account was still open; had an outstanding balance due in the amount of $110,887; a past due amount of $64,549, and a pay status of 120 days past due. This information was reported on Plaintiff's credit report as an Adverse Account.

38.     On or about May 31, 2018, Defendant reported to Experian that the Account was open, had an outstanding balance due in the amount of $110,887, a past due amount of $64,549, and was 180 days past due.

39.     On or about May 31, 2018, Defendant reported to Equifax that the Account was open, had an outstanding balance due in the amount of $110,887, an account status of over 120 days past due and 180 days or more past due with a first date of delinquency of March 01, 2012.

40.     As a result of Defendant's furnishing false, negative information on the Account which was reported on Plaintiff's credit reports, this caused Plaintiff's credit score to drop from 653 to 516, resulting in Plaintiff being denied credit.

41.      Redacted excerpts of the relevant portions of Plaintiff's 06/27/18 TransUnion, Experian and Equifax credit reports dated 06/27/18, showing Defendant's inaccurate credit

reporting at issue, are attached hereto as Exhibits "K," "L" and "M," respectively, and incorporated herein by reference.

42.     Defendant's inaccurate and false reporting to the CRAs on the Account at issue and its failure to correct and update this information was a breach of its duties to provide accurate information to the CRAs under FCRA, 15 U.S.C. §1681s-2(a), which provides that furnishers of information to the CRAs have a duty to provide accurate information to them and to correct and update information that is not complete or accurate and shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate.

43.     At all relevant times post-discharge, Defendant knew how to report to the CRAs that a debt has been included in and/or discharged in bankruptcy. However, by reporting that Plaintiff continued to owe a balance on the Account and that the Account was past due, after the debt had been discharged in bankruptcy, Defendant misrepresented that Plaintiff had a legal obligation to repay the subject debt. A third party who obtains a copy of Plaintiff's credit reports reflecting this incorrect information will assume Plaintiff is still liable for the subject discharged debt, and that Plaintiff reaffirmed the subject debt in his Bankruptcy Case and then failed to pay it, or that Defendant asserted a dischargeability complaint against Plaintiff on the debt in his Bankruptcy Case and prevailed and the Bankruptcy Court held the debt was not discharged as to Plaintiff's personal liability.

44.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show Defendant intentionally and maliciously furnished false and

inaccurate information to the CRAs on the Account to be reported on his credit reports, in accordance with its policies, procedures and practices, as stated hereinabove, when it knew: the debt on the Account was included in bankruptcy or discharged; the Property was surrendered, and that it could no longer legally attempt to collect the subject debt from Plaintiff.

45.     Moreover, as Defendant acquired the servicing rights on the Account years after the debt was discharged and Plaintiff's surrender of the Property, and Plaintiff never sought credit from Defendant or engaged in business with Defendant, there was no debtor-creditor relationship between Plaintiff and Defendant, so Defendant had no right to report on the Account with the CRAs.

46.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show Defendant has a policy and procedure to: acquire servicing rights on discharged debt with the intent to collect on the discharged debt; furnish false, negative information on accounts with underlying discharged debt to the CRAs, for accounts which it has acquired servicing rights for post-discharge, to be reported on the respective discharged consumer's credit reports; refuse to properly furnish and update this false, negative information it furnishes to the CRAs to be reported on credit reports of discharged consumers, like Plaintiff, to show that discharged debts have been discharged in bankruptcy. The purpose of having these policies and procedures is to keep false information on the credit reports of these consumers which incorrectly represents that discharged debt, on which Defendant is attempting to collect, is still due and owing; this false information consists of a past due balance shown as owing on these accounts which are reported as open, even though the underlying debts have been discharged and Defendant has no right to report to the CRAs on these accounts since there is no

debtor-creditor relationship between the discharged consumer and Defendant at the time of Defendant's improper reporting to the CRAs and the accounts have been closed upon discharge.

47.     At all relevant times, Defendant has known that once a debt on an account is discharged in bankruptcy, there can be no balance owed on the account by the discharged debtor and the account is closed by operation of law. Nevertheless, Defendant intentionally refused to report the correct or current status of such discharged debt to the CRAs.

48.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that Defendant reports and updates information it furnished to the CRAs on hundreds or thousands of accounts each month, but has willfully and maliciously refused to properly update the information on Plaintiff's discharged Account and other consumers' accounts for debts discharged in bankruptcy upon which Defendant is illegally attempting to collect.

49.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show Defendant promised through its subscriber agreements or contracts with the CRAs, to properly furnish accurate information and correct any inaccurate information for accounts that have been discharged in bankruptcy; but Defendant has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow these requirements and agreements, which has resulted in its intended consequences of false information being reported on credit reports as to discharged debt in furtherance of its attempts to collect the debt, including, but not limited to, Plaintiff's credit reports at issue.

50.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that Defendant has a policy and procedure to "park" false

information on accounts with debt discharged in bankruptcy with at least one of the discharged debtors' and account holders' consumer credit reports with the CRAs. The term "parking" is a term in the industry meaning keeping a false balance (or false account) on individuals' consumer credit reports so that the consumer will be forced to pay off the purported balance in order to qualify for a loan and obtain financing or refinancing, or to increase the consumer's credit score from the artificially lowered score, which directly resulted from the creditors' intentional and malicious conduct of reporting false information or not reporting correct information to the credit bureaus.

51.     In the context of "parking" an account, Defendant has a contractual duty, coupled with an obligation and duty under state and federal law, to accurately report the balance on such accounts, but it willfully and maliciously ignores its contractual duties and refuses to obey applicable law.

52.     Defendant knows that "parking" an incorrect balance on accounts whose underlying debts have been discharged in bankruptcy will lead to false and defamatory information being published every time a consumer's credit report is accessed and reviewed by a person or entity, such as Plaintiff's consumer reports at issue, and this is the malicious and intentional design behind its actions at issue, with the goal to force discharged consumers, such as Plaintiff, to pay discharged debt.

53.     Here, Plaintiff's credit reports at issue have been accessed by third parties numerous times since the subject debt was discharged in Plaintiff's Bankruptcy Case; therefore, the false information Defendant furnished to the CRAs on the Account has been published to numerous third parties – which is what Defendant calculated and intended to happen.

54.     When a consumer who has discharged debt on an account pays the debt on such "parked" account, Defendant will claim that such payment was purely "voluntarily" or was to pay off a "moral obligation." Defendant, however, knows that by willfully and maliciously "parking" discharged debt on consumers' credit reports for accounts on whose debts it is trying to collect, illegal payment can be extorted from this group of innocent and unassuming consumers which includes Plaintiff.

55.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that despite Defendant receiving dozens, if not hundreds, of account disputes regarding this type of false credit reporting, Defendant continues to report false information to the CRAs on accounts included and/or discharged in bankruptcy, and it intentionally and knowingly has not corrected its policies of keeping false and damaging information from being reported and updated correctly on these consumers' credit reports, including, but not limited to Plaintiff's credit reports at issue.

## V. GROUNDS FOR RELIEF - COUNT I

### TEXAS FINANCE CODE – UNFAIR DEBT COLLECTION

56.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

57.     Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

> a.     Tex. Fin. Code § 392.301(a)(8), which prohibits Defendant from threatening to take an action prohibited by law, since the bankruptcy discharge injunction prohibits attempting to collect debts discharged in bankruptcy *in personam*, Defendant's statements and correspondences, as well as Defendant's reporting on the Account that the Account was open and the debt was past due, are all threats Defendant will continue to illegally collect on the Account from Plaintiff in violation of the TDCA;

b.      Tex. Fin. Code § 392.304(a)(8), which prohibits misrepresenting the character, extent, or amount of Plaintiff's debt, since Defendant's post-discharge statements, notices and letters at issue misrepresent that Plaintiff owes the subject discharged debt and Defendant made misrepresentations to the CRAs that the debt on the Account was past-due, the Account was open, which were reported on Plaintiff's credit reports, these were misrepresentations of the character, extent or amount of the subject debt in violation of the TDCA to Plaintiff; and

c)      Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, for the same reasons stated in the preceding paragraphs, Defendant was deceptively trying to coerce Plaintiff into paying the subject debt when it knew it was included in or discharged in bankruptcy, legally uncollectible from Plaintiff and that Plaintiff had surrendered the Property at all times at issue.

58.     Under Tex. Fin. Code Ann. § 392.403, Defendant's actions at issue make it liable to Plaintiff for actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees under the TDCA. Also, Plaintiff's injuries resulted from Defendant's malice, and/or actual fraud which entitle Plaintiff to punitive damages.

59.     Due to Defendant's conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorney's fees incurred in prosecuting this claim.

## VI. GROUNDS FOR RELIEF - COUNT II

### VIOLATION OF THE DISCHARGE INJUNCTION

60.     Plaintiff repeats, re-alleges, and incorporates all previous paragraphs above as if set forth herein in their entirety.

61.     At all times material to this proceeding, Defendant had actual knowledge about Plaintiff's Bankruptcy Case, the discharge of the debt at issue and surrender of the Property.

62.     Defendant failed to not collect or cease its debt collection activity on the Account and debt at issue when it knew the debt on the Account was discharged in Plaintiff's Bankruptcy Case, as evidenced by Defendant sending Plaintiff the statements, notice and letter at issue;

calling Plaintiff; and reporting false, negative information on the Account to the CRAs to be reported on Plaintiff's credit reports and failing to update this inaccurate information with them. These acts were attempts to collect the subject debt from Plaintiff.

63.    Defendant's aforesaid actions were willful acts and constitute efforts to collect discharged debt from Plaintiff in violation the automatic stay and discharge injunction of 11 U.S.C. § 524(a). Defendant's failure to comply with the aforesaid laws while being on notice of Plaintiff's Bankruptcy Case and discharge, as well as the legal effect of the discharge injunction and its failure to comply with its duties to update its inaccurate reporting of information on the Account at issue to the CRAs under 15 U.S.C. §1681s-2(a), illustrates its contempt for federal law.

64.    The totality of the circumstances and individual actions of Defendant at issue taken during the Bankruptcy Case and post-discharge, by sending post-discharge billing statement and correspondences to Plaintiff demanding payment or actions to coerce payment from him on the Account; making collection call(s) to Plaintiff; and furnishing false, negative information to the CRAs on the Account failing to update and correct this inaccurate reporting of information with the CRAs, constitute gross violations of the discharge injunction as set forth in 11 U.S.C. § 524(a)(1)-(3).

65.    The facts and background stated above demonstrate that Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court as they concern the bankruptcy filed by Plaintiff. With this prima facie showing, the duty is on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability. Failing a showing of a present

17

inability to comply with the orders and injunctions of the Bankruptcy Court by Defendant, Plaintiff must prevail on his claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court regarding the bankruptcy filed by Plaintiff and subsequent discharge. Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for its conduct and actions. Any allegation of a good faith exception should not be allowed.

66.     Defendant violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. § 524(a)(2) which "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not the discharge of such debt is waived;…".

67.     No exceptions exist under 11 U.S.C. § 524 or any other provision of the United States Bankruptcy Code or other applicable law that permit the conduct of Defendant at issue with regard to the automatic stay or discharge injunction, as stated above.

68.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint. None of the aforementioned has been approved by the Court here, and no waiver of the automatic stay, orders or injunctions of the Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendant.

69.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiff with policing the misconduct of Defendant would be a complete derogation of the law.

It is well settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant. No allegation of a mitigation as a defense should be allowed.

70.     Plaintiff has been injured and damaged by Defendant's actions and is entitled to recover judgment against Defendant, jointly and severally, for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. § 524, and pursuant to the Court's powers under 11 U.S.C. § 105.

### VII. GROUNDS FOR RELIEF - COUNT III

### INVASION OF PRIVACY

71.     Plaintiff repeats, re-alleges, and incorporate by reference the paragraphs above, as if fully rewritten here in their entirety.

72.     When Defendant sent Plaintiff the statements, notice and letter at issue, these actions constituted an invasion of Plaintiff's private affairs and privacy rights. These invasions were ones that would be highly offensive to a reasonable person because Defendant was forbidden from contacting Plaintiff to collect on the subject discharged debt after it was discharged as to Plaintiff's personal liability and the Property surrendered. Plaintiff had a reasonable and lawful expectation to not be contacted and harassed by Defendant, an entity with which it had no business or debtor-creditor relationship, post-discharge. Defendant's actions at issue were wrongful acts which caused injury to Plaintiff.

73.     Plaintiff's injuries resulted from Defendant's malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VIII. DAMAGES

74.     In addition to any damages previously stated hereinabove, the conduct of Defendant at issue has proximately caused Plaintiff past and future monetary loss and a discernable injury to Plaintiff's emotional state and other damages, evidence for which will be presented to the jury. Moreover, every offensive and harassing statement and correspondence Plaintiff received at issue used Plaintiff's time and mental energy, both of which are precious to him.

75.     The conduct of Defendant at issue has proximately caused Plaintiff past and future monetary loss with regard to his credit score, credit reputation and credit history, and for actions he has had to take investigating his claims at bar, making copies of credit reports and documents, expenses incurred related thereto and related to bringing this lawsuit.

76.     After a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of any type for Defendant in the line and scope of such individuals' (or entities') employment, agency, or representation.

77.     After a reasonable time to conduct discovery, Plaintiff believes he will be able to show that all actions taken by Defendant at issue were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, and with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

78.     At all relevant times, Defendant knew, and continue to know, that a debt included in bankruptcy or discharged in bankruptcy, means those debts are not legally collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to violate Plaintiff's legal rights.

79.     After a reasonable time for discovery, Plaintiff believes he will be able to show that despite Defendant receiving dozens, if not hundreds, of disputes complaining about the types of actions at issue, Defendant intentionally and knowingly has not corrected its policies of engaging in these actions.

80.     After a reasonable time for discovery, Plaintiff believes he will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its policies and procedures, with respect to willfully, intentionally, and maliciously: attempting to collect on debts included in and discharged in bankruptcy through collection letters, notices and statements; illegal collection calls; and by reporting false, negative information to the CRAs on accounts discharged in bankruptcy to be reported on consumers' credit reports to appear as if debts on such accounts are past due and owing and/or to provide negative information to harm these consumers' credit scores and credit reputation to injure and harm them. Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies. Moreover, Plaintiff's injuries resulted from Defendant's malice, and/or actual fraud, which entitle Plaintiff to punitive damages.

81.     Due to Defendant's conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorney's fees incurred in prosecuting his claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Robert Thomas Moore, prays the Court will:

A.      Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees as provided by applicable law;

B       Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.      Grant such other and further relief, in law or equity, to which Plaintiff might show he is justly entitled.

                                        Respectfully submitted,


                                        */s/ James J. Manchee*
                                        James J. Manchee
                                        State Bar Number 00796988
                                        jim@mancheelawfirm.com
                                        Marilyn S. Altamira
                                        State Bar Number 00796119
                                        maltamira@mancheelawfirm.com
                                        MANCHEE & MANCHEE, PC
                                        2745 North Dallas Parkway, Suite 420
                                        Plano, Texas 75093
                                        (972) 960-2240 (telephone)
                                        (972) 233-0713 (fax)

                        **COUNSEL FOR PLAINTIFF**

                        **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

July 19, 2018                           */s/ James J. Manchee*
Date                                    James J. Manchee

22